## SULLIVAN v. HUFF.

1. Findings of fact by master and Circuit Judge, affirmed.
2. Where parties purchase machinery at public auction, and, after full opportunity to examine the property and after an inspection thereof, complete their purchase by executing their bond and mortgage, they cannot afterwards resist foreclosure upon the ground of failure of consideration, nor invoke the principle that a sound price warrants a sound commodity.

Before HUDSON, J., Greenville, April, 1884.

This was an action by William D. Sullivan against P. D. Huff, C. A. Parkins, J. H. Latimer, and Hewlet Sullivan, commenced in July, 1883. So much of Master Douthit's report as relates to the matters considered by this court was as follows:

The master, to whom it was referred to hear and determine the issues of law and fact involved in the above entitled cause, with leave to report any special matter, begs leave to report that he has held references, and from the evidence adduced and herewith filed, he respectfully submits the following report:

As matters of fact, he finds:

I. That the plaintiff, as assignee of the Sullivan Manufacturing Company, advertised the real estate, the factory, and other appurtenances for sale at public outcry, at Greenville Court House, on Saturday, the 1st day of July, 1882, for one-third cash and the remainder on a credit of twelve months; the credit portion to be secured by bond of the purchaser and a mortgage of the premises. The factory and other buildings to be insured and the policy of insurance to be assigned to the plaintiff. In the advertisement the factory was represented as containing 1,136 frame ring spindles, 316 twister spindles, and 960 mule spindles, with accompanying machinery of modern style, and that there were also 50 four-quarter looms for plain sheetings, which were idle, but in good repair.

II. That the property was sold on the day advertised, and was purchased by the defendants (with the exception of Hewlet Sullivan) for $25,000. The said Hewlet Sullivan, on behalf of the purchasers, in compliance with the terms of sale, deposited with the plaintiff $5,000 as security that the terms of sale would be complied with as soon as the titles could be investigated. The keys were then turned over to the purchasers, and they were virtually put in possession. On the following Monday, at the request of the plaintiff, the superintendent of the factory carried Messrs. Huff and Parkins, two of the purchasers, through the factory and showed them all the machinery, and explained to them what belonged to J. H. Sullivan & Co., lessees, which was reserved and excepted at the sale, and on Thursday or Friday following

they, in company with their superintendent, were again shown through the factory by G. W. Sullivan, and all the machinery was shown to them. On Friday, the 7th of July, 1882, defendant Sullivan, for the purchasers, paid the balance of the cash portion, and they at once commenced operating the factory, but they did not deliver to the plaintiff their note and mortgage until the 21st day of August, 1882, nor was the deed to the property delivered to them until then. They continued to operate the factory, and made no complaint to the plaintiff about the machinery being defective, or not being as represented in the advertisement, until after their note had become due, and he demanded payment of them. They then claimed that it was defective, but offered to compromise and settle if he would discount, according to their statement, $3,000, and according to his, $2,500, which he refused, and in a few days thereafter instituted this suit.

        *            *            *            *            *

V. That by mistake the plaintiff advertised eight spindles more than were actually in the factory, which were worth about $24.

VI. That the purchasers operated the factory about thirteen months, and lost during that time between $2,500 and $3,000, exclusive of improvements made by them, which cost from $2,500 to $2,800.

VII. That at the sale of the property, G. W. Sullivan, sr., who was a large stockholder, a large creditor, and former president of the old company, bid $24,000 for it, and before the bidding commenced deposited with the assignee a check for $5,000; and it also appears from his testimony that he intended to make it bring the amount it sold for.

VIII. That when the lessees leased the factory, they found the machinery full of wrought cotton, and when they turned it over to the purchasers, they left it in the same condition; that said cotton was worth $150, and it was not included in the advertisement.

The foregoing are the undisputed facts, and the matters in dispute are whether the spindles, with accompanying machinery, were of modern style, and the looms in good repair, as represented in the advertisement. There is a great deal of testimony on these points, from which it will be seen that there is quite a difference

of opinion touching the same, and it is very hard to reconcile, as all of the witnesses are equally entitled to credit as to veracity, so far as the master knows.   *   *   *

It must be remembered that this factory was started in 1872, and that constant improvements and modifications have been made in machinery since then, and what might have been considered modern then might not have been considered, technically speaking, modern at the date of the sale; that is, it might not have had all of the latest patents and attachments; still it might have been sufficiently modern to justify the plaintiff to advertise it as such, and the master is inclined to that opinion, as there is a slight preponderance of testimony given to show that it was.

But admitting that it did not strictly come up to the representations made in the advertisement, are the defendants entitled to any discount on account thereof? They claim that a sound price calls for a sound commodity, which is correct as a general proposition of law, but is this proposition of law applicable to all the facts in this case? The maxim of the civil law, that a sound price calls for a sound commodity, which has been adopted in this State, applies to cases where the defect in the thing sold was unknown to the purchaser at the time of the sale, or where, by fraud or misrepresentation, the purchaser is misled as to the character, extent, or probable consequences of the defect known to him at the time of the sale. The object of the rule formulated in this maxim is to protect the purchaser against latent defects and against fraud and circumvention, and it was never designed to enable persons to get rid of injudicious contracts fairly made, under a full knowledge of all the circumstances relating to the subject matter of such contracts." *Thomson* v. *Sexton*, 15 *S. C.*, 93.

The evidence in this case shows that the purchasers have resided in this county from the time the factory was first started up to the time of sale; one of them, it seems, was one of the original stockholders; all of them are nearly related to, or connected by marriage with, the founders of this factory, and must have known when the machinery was first put in, and could thus form an opinion as to how long it had been in use. They assumed the responsibility of buying it without first making an examination of it, or without employing an expert to do so for them (which

two of the witnesses, Messrs. Hammett and Lanneau, testify that they never would have thought of doing). But after they had purchased, and before they had complied with the terms of the sale, Messrs. Huff and Parkins were twice shown through the factory, once in company with Mr. Jones, their own superintendent, and all of the machinery was pointed out to them. The evidence further shows that they operated the factory for about six weeks before they finally complied with the terms of sale by giving their bond and mortgage, and receiving a deed for the property.

Now, is it reasonable to suppose that the purchasers, who are all intelligent men, would have made so important a purchase on the mere representations made in the advertisement without knowing something of the condition of the property they were buying? But if they were imprudent enough to do this, had they not ample opportunity after the sale, and before complying with the terms thereof, to ascertain its true condition? The evidence shows that they did, and that after making an examination and actually testing the machinery by operating it for about six weeks, they chose to stand by their bargain, gave their bond and mortgage, and accepted a deed to the property. The master is of opinion that the maxim, that a sound price warrants a sound commodity, cannot be applied to this case, even if had been known that the property sold was not the kind represented in the advertisement, which certainly has not been done by a preponderance of the testimony. The master, therefore, finds that the plaintiff is entitled to recover the full amount of his mortgaged debt, which at this date amounts to eighteen thousand seven hundred and seventeen 55–100 dollars.

The master further finds that the plaintiff is entitled to recover two hundred and forty dollars on account of the insurance, less twenty-four dollars for the deficiency in the number of the spindles, which leaves due on account thereof two hundred and sixteen dollars.

Exceptions taken by defendants to this report were overruled by the Circuit Judge, and the report was confirmed. Defendants appealed.

*Messrs. Perry & Perry*, for appellants.

*Messrs. Wells & Orr*, and *M. F. Ansel*, contra.

March 8, 1886. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. The plaintiff, as assignee, held a large note on the defendants, other than Hewlet Sullivan, given in the purchase of certain real estate situate in Greenville County, including the factory buildings erected thereon, with all the machinery thereof, known as the property of the Sullivan Manufacturing Company, the said note being secured by a mortgage of the property purchased, which property was afterwards sold by the aforesaid defendants to the defendant, Hewlet Sullivan, the said Hewlet obligating himself to pay whatever sum might be justly due and recoverable on the mortgage debt. The action below was brought on this note, and to foreclose the mortgage. The property was purchased by the defendants first named, other than the said Hewlet, at public sale, made by the assignee under an advertisement, in which it is alleged that certain false statements were made as to the character, quantity, and quality of the machinery. The defendants resisted full payment on the ground that the property bought was not as represented in the advertisement; that it was greatly deficient, both in quantity and quality; that there was failure of consideration; and that they had been misled by these misrepresentations, and thereby damaged to a large amount. And they asked that these matters should be inquired into, and that the amount of damage sustained by them be deducted from the mortgage debt, with leave to pay the balance into court, and be dismissed with their reasonable costs and charges.

The case was referred to the master, who, upon the testimony, reported, in substance, that the plaintiff as assignee acted in good faith in his advertisement; that the statements as to the modern character of the machinery, &c., were justified by the preponderance of the testimony; that there was no failure of consideration, but even if there was, that the defendants could not claim the benefit of the doctrine, that a sound price demands a sound commodity, for the reason they must have known all about the char-

acter of the property bought, or might have known it, from their near residence thereto, and their familiarity with the factory during all the time it had been in operation before the purchase— one at least having been a stockholder, and two or more of them having been shown through and afforded ample opportunity to examine the machinery before the purchase was completed. And he concludes, therefore, that even if it had been shown before him that the property was not as represented in the advertise- ment, yet the defendants could not, under the circumstances, claim a deduction; stating distinctly, however, that this was not shown by the preponderance of the testimony. He reported that plaintiff was entitled to recover the full amount of his mortgage debt, which at that date amounted to $18,717.55. He also reported in favor of an insurance claim, not involved here.

To this report the defendants excepted: 1st, as to the findings of fact on the question of misrepresentations in the advertisement, and the failure of consideration. And, 2d, because the master erred in holding that the doctrine of sound price, &c., did not apply to the case. His honor, Judge Hudson, overruled these exceptions and confirmed the report, ordering a foreclosure sale, with leave to issue execution for any deficiency, &c. The appeal raises the same questions as those below.

As to the questions of fact. The testimony is very fully re- ported, as taken down from the witnesses and then examined and discussed in the elaborate report of the master, in which he shows very satisfactorily that its preponderance sustains his findings. True, the witnesses do not entirely harmonize, and there is some difference of opinion between them as to the quality of some por- tions of the machinery, but upon weighing the whole evidence, we do not feel at liberty to reverse the master's finding, sustained as it is by the unqualified concurrence of the Circuit Judge.

Nor was there error below, by the Circuit Judge, in overruling the exception to the master's report in regard to application of the doctrine of a sound price, &c. *Thomson* v. *Sexton*, 15 *S. C.*, 93, and the cases there cited. It is apparent, from what is stated, that the defendants (purchasers) had full opportunity to examine the property; some of them went through the factory more than once, after they had bid it off, and before the contract was con-

summated by the execution of papers; one of them had been an original stockholder; all were near neighbors; they completed the contract without complaint; and nothing was ever said about misrepresentation or failure of consideration until the note fell due and payment was demanded. But even if it had been otherwise, the complete answer to all this is, that the master has found as matter of fact that there was no misrepresentation nor failure of consideration of any kind. The Circuit Judge has confirmed this finding, and we cannot say that the finding is either without testimony to sustain it, or is against the manifest weight thereof.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.